107 N.J. Super. 517 (1969)
259 A.2d 477
ALFRED VAIL MUTUAL ASSOCIATION AND THE TOWNSHIP OF SHREWSBURY, PLAINTIFFS-APPELLANTS,
v.
SPEAKER OF HOUSE, ROBERT HALPIN; PRESIDENT OF SENATE, SIDO RIDOLFI; BOROUGH OF NEW SHREWSBURY; MAYOR, JACK LEMON; TINTON FALLS REGIONAL ELEMENTARY SCHOOL BOARD OF EDUCATION; AND JOHN THOMPSON, PRESIDENT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1969.
Decided December 2, 1969.
*520 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. William Himelman argued the cause for plaintiffs (Messrs. Klatsky, Himelman & Siegfried, attorneys).
Mr. Martin M. Barger argued the cause for defendant Borough of New Shrewsbury (Messrs. Reussille, Cornwell, *521 Mausner & Carotenuto, attorneys); Mr. Richard J. Porter joined in the brief for defendant Tinton Falls Regional Elementary School Board of Education (Messrs. Beekman & Porter, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Plaintiffs attack the validity of the apportionment of expenses for regional school costs as between the Township of Shrewsbury and the Borough of New Shrewsbury, resulting from the adoption of L. 1965, c. 175 (N.J.S.A. 18:8-17.2).[1]
The cited statute is attacked as unconstitutional and its effect impugned as invalid on various grounds. The gravamen of the grievance asserted is that whereas previously the named municipalities shared costs of annual or special appropriations of the regional school district, which they constitute together, on the basis of the respective proportions of assessed valuations for taxation, the 1965 enactment changed that basis to the proportions of children enrolled in the schools.
The Law Division held against plaintiffs, and they appeal.
Shrewsbury and New Shrewsbury comprise a regional elementary school district denominated Tinton Falls Regional Elementary School District. This district and the Borough of Eatontown School District constitute together a regional high school district called Monmouth Regional High School District. Involved in the litigation is the division of elementary school costs for the Tinton Falls district and for the share of the expenses for the high school district as between Shrewsbury and New Shrewsbury. Eatontown is not affected.

*522 I. Background
An understanding of this controversy requires outlines of the history both of the school districts affected and of the applicable legislation. The former is largely based upon the contents of a supplemental brief supplied by defendants insofar as not controverted by plaintiffs.

A. As to the Governmental Entities
Prior to 1950 the Township of Shrewsbury comprised both of what now are known as the Township of Shrewsbury and the Borough of New Shrewsbury. Pursuant to L. 1950, c. 133, and a referendum of the voters in the area designated thereby, the Borough of New Shrewsbury (New Shrewsbury, hereinafter) was carved out of the former township, and the remnant continued as the Township of Shrewsbury (Shrewsbury, hereinafter). New Shrewsbury is substantially the larger in population and area. These municipalities continued, however, as a single school district. Costs of the school district were apportionable to the constituent municipalities on the basis of assessed valuations.
We are told that the population of Shrewsbury after the severance consisted mainly of the residents of a housing development on property of the United States Government built about 1941, known as Alfred Vail Homes, and of another smaller housing development constructed later known as Crawford Street Apartments. The Vail Homes being on tax-exempt property owned by the Federal Government, certain moneys were paid in lieu of taxes by the Government to the Shrewsbury Township School District on a per-pupil basis. The United States sold the Vail Homes in 1957 to plaintiff Alfred Vail Mutual Association, a corporation, and as a result federal school aid was discontinued July 1, 1958. The Crawford Street Apartments were sold to the township. (We are not told who now owns them.) The aggregate assessed valuations of Shrewsbury apparently now consist *523 solely, or substantially so, of the two housing developments mentioned. New Shrewsbury's assessed valuations consist primarily of individual residences.
In 1957 New Shrewsbury attempted, pursuant to N.J.S.A. 18:5-1.1 et seq., to split the Shrewsbury Township School District, apparently because of the prospective loss of federal tax aid in relation to the Vail Homes, but failed because of a veto by the statutory board of review based upon the ground that Shrewsbury was too small to maintain a school district.
On November 27, 1957 the voters of the Eatontown and Shrewsbury School Districts passed a referendum authorized by those bodies to create a regional high school district. The terms of the referendum called for apportioning annual costs thereof, as between the two said districts, on a per-pupil basis (average daily enrollment). However, as between Shrewsbury and New Shrewsbury, the high school regional costs were to be divided on the basis of assessed valuations.
In 1962 the board of education of the Shrewsbury School District submitted to the voters of the constituent municipalities a referendum to regionalize the district, and this was passed in both municipalities. The purpose was to qualify for larger state aid. The regionalization proposal, as submitted to the voters, called for apportionment of costs on the basis of assessed valuations, the statute affording an option as between that basis and average daily enrollment. N.J.S.A. 18:8-1. As indicated above, the regional district thus created is now denominated Tinton Falls Regional Elementary School District. It clearly appears that the ratio of enrolled pupils to assessed valuations is substantially lower in New Shrewsbury than in Shrewsbury.

B. As to Apportionment Legislation
Prior to 1953 apportionment of the expense of annual or special appropriations in regional school districts among constitutent municipalities was solely on the basis of assessed *524 valuations ("ratables"). R.S. 18:8-17. Under L. 1953, c. 90, R.S. 18:8-1, dealing with the creation of regional school districts, was amended to provide that the constituent boards of education involved should not only initiate the referendum for the establishment of a regional district but also determine whether amounts to be raised for the aforestated purposes should be "apportioned upon the basis of ratables or average daily attendance." Thus the issue presented to the voters at any referendum included both the question of adoption of the regional district and approval of the apportionment method selected by the submitting board of education.
The 1953 act also amended R.S. 18:8-17 to provide that expenses should be apportioned on the following bases: (1) amounts for interest and redemption of bonds  ratables of the districts; (2) amounts for annual or special appropriations for regional districts created before the adoption of the act  ratables of the districts; (3) amounts for annual or special appropriations for regional districts created thereafter  either ratables or average daily attendance, as determined by the boards of education and ratified by the voters.
Aside from minor changes effected by L. 1954, c. 13, L. 1955, c. 159, L. 1956, c. 95 and L. 1965, c. 110, no other amendatory legislation was adopted until the enactment of L. 1965, c. 175, the act here principally involved (incorporated into N.J.S.A. as section 18:8-17.2). This read as follows:
Whenever any school district which was comprised of 2 municipalities has, since January 1, 1957, joined in the formation of a regional district for high school purposes and thereafter joined in the formation of another regional district for all other school purposes, the amounts to be raised in such municipalities for annual or special appropriations for both such regional districts shall be apportioned between such 2 municipalities upon the basis of the number of pupils enrolled therefrom on the last school day of September of the current school year in the same manner as would apply if said municipalities comprised separate constituent school districts.
*525 With the revision of Title 18 as Title 18A (see footnote 1, supra), N.J.S.A. 18:8-17.2 was superseded by N.J.S.A. 18A:13-23, effective January 11, 1968. This reads:
The annual or special appropriations for regional districts, exclusive of the amounts to be raised for interest upon, and the redemption of, bonds payable by the district, shall be apportioned among the municipalities included within the regional district as follows:
a. In regional districts in which apportionment on the basis of the number of pupils enrolled on the last school day of September of the current school year is in effect, such apportionment shall be made upon said basis;
b. In all other regional districts upon the basis of the apportionment valuations, as defined in section 54:4-49 of the Revised Statutes, of the constituent districts. [emphasis added]
In other words, insofar as the litigants before us are concerned, the revision froze the status of apportionment as changed by L. 1965, c. 175. Under that act, the apportionments since January 1, 1966 have been made on the basis of pupil enrollment in the schools of the respective municipalities here involved.

II. Effect of L. 1965, c. 175
The parties agree that Tinton Falls Regional Elementary School District is a school district that meets the criteria of L. 1965, c. 175. They also agree that they know of no other regional school district in the State that precisely meets all of the criteria specified. Excluded by the terms of the act would be: any school district comprising more than two municipalities; any school district which took any of the determinative steps prior to January 1, 1957, and any school district which regionalized for elementary school purposes prior to regionalization for high school purposes. Background materials supplied us by defendants leave little doubt that L. 1965, c. 175, was conceived, tailored and enacted *526 for the sole purpose of relieving New Shrewsbury from what was regarded as an unfair burden of the school costs vis-a-vis Shrewsbury in the two regional districts (elementary and high school) involved. The parties agree that as of the period of time since January 1, 1966 (and probably for the foreseeable future) the change from assessed valuations to enrollment of pupils as the basis of apportionment will redound substantially to the pecuniary benefit of New Shrewsbury at the expense of Shrewsbury, in camparison to the preexisting situation.
By their complaint, filed in December 1967, plaintiffs attacked the altered basis for apportionment as invalid and sought readjustment in favor of Shrewsbury for its payments of school costs for the years already affected by L. 1965, c. 175 and a declaratory judgment that in the future apportionment be made under the controlling statutes as of prior to L. 1965, c. 175. Their appellate brief contends the act offends the equal protection clause of the Fourteenth Amendment of the United States Constitution; contravenes the statutory and constitutional right to vote, and constitutes special and local legislation relating to taxation or exemption therefrom in violation of the prohibition of such special and local laws in N.J. Const. Art IV, § VII, par. 9(6). In relation to the last point, this court has invited and received supplemental briefs as to whether the appropriate subparagraphs of paragraph 9 to be considered in relation to the constitutional attack upon chapter 175 are not rather (7) and (13), prohibiting special and local laws, respectively, "Providing for the management and control of free public schools" and "Regulating the internal affairs of municipalities formed for local government and counties * * *."
Defendants assert the constitutional questions argued can be avoided by holding for them on non-constitutional grounds. We proceed to consider the latter.

*527 III. Status of Alfred Vail Mutual Association as Plaintiff
If the named plaintiff had no status to sue, the constitutional issues would still require determination since plaintiff municipality, Township of Shrewsbury, unquestionably is a proper party plaintiff. However, we think the Association, particularly as the largest taxpayer in the municipality, has standing to sue to redress an illegal diversion of municipal funds. See Haines v. Burlington County Bridge Comm., 1 N.J. Super. 163, 171-172 (App. Div. 1949).

IV. The Constitutionality of L. 1965, c. 175, as Moot in View of N.J.S.A. 18A:13-23
Defendants argue that since N.J.S.A. 18:8-17.2 (quoted above), whose source is L. 1965, c. 175, has been superseded by N.J.S.A. 18A:13-23, the validity of chapter 175 is moot, and they claim that N.J.S.A. 18A:13-23 is not being challenged by plaintiffs. This approach evades the real issue. As noted above, N.J.S.A. 18A:13-23 did not effect any substantive change in the law but merely froze the status of all the applicable law as it then stood, necessarily including the provision of L. 1965, c. 175. Consequently, plaintiffs' attack, though addressed to the 1965 act, necessarily encompasses so much of N.J.S.A. 18A:13-23 as continues its effect.

V. The Inappropriateness of Plaintiffs' Claim Insofar As They Seek "Damages"
Defendants point to allegations in plaintiffs' brief concerning this action as one to recover "damages" and argue that they have committed no "wrong" warranting an action for damages. References to damages in plaintiffs' brief are misconceptions. The nature of the relief sought by plaintiffs is more accurately stated in the prayer for *528 relief in their complaint, wherein, as noted above, they seek judgment that amounts to be used for annual and special appropriations for school purposes be apportioned between the constituent municipalities upon the basis of assessed valuations, and that the determination be made retroactive so as to credit Shrewsbury, in the course of future apportionments, for excess moneys previously exacted from it pursuant to the 1965 statute. Thus understood, this is not a tort or contract action for "damages" but rather for relief in lieu of prerogative writs.

VI. L. 1965, c. 175 as Prohibited Special or Local Legislation
We conceive this to be the determinative issue before us and are satisfied that plaintiffs are basically right on it. However, the statute is not, as plaintiffs first argued, in the category of special laws "relating to taxation or exemption therefrom." The act has nothing to do with the levying of taxes. Rather, it has to do with the allocation and use of municipal funds, derived from whatever sources, for the support of public schools. In that sense it prima facie falls into the category "(7) Providing for the management and control of free public schools" of paragraph 9 of Section VII of Article IV of the Constitution of 1947, prohibiting private, special or local laws in that and 12 other categories. Cf. Riccio v. City of Hoboken, 69 N.J.L. 649 (E. & A. 1903). Defendants argue to the contrary, contending that apportionment of costs between municipalities for regional school purposes does not appertain to either "management" or "control" of schools. They point to what they regard as a significant difference in this regard between the pertinent language of the present constitution (1947) and that used in the 1875 amendment of Article IV of the 1844 constitution: "Providing for the management and support of free public schools." Substitution *529 of "control" for "support" in 1947 is argued to indicate an intent of the framers of the present constitution to exclude fiscal regulations from the intent of the provision relating to special and local laws concerning public schools.
An examination of the proceedings of the 1947 Constitutional Convention shows the position advanced not to be substantiated. On July 1, 1947 the Committee on the Legislative unanimously voted to retain Article IV, § VII, paragraph 11(10), the comparable provision of the former constitution, without change. III Proceedings of Constitutional Convention of 1947, at 496. At the same time the committee, with one dissent, agreed that "the attention of the proper Committee of the Convention should be called to the possibility of rephrasing any of the foregoing paragraphs [concerning special, private or local laws] without changing the sense thereof." Id. (emphasis ours). Charles deF. Besore, committee technician, was assigned the task of preparing a tentative draft of Article IV (Legislative), and such a draft was presented by him to the committee on July 15, 1947. Id., at 645. This included paragraph 9(7) as it now stands, of the present constitution, and the draft of that provision was approved by the committee without change. Id., at 653. The text is found in II Proceedings of the Constitutional Convention, at 1067. It was adopted by the convention in that form. While a comparison of all ten subparagraphs of paragraph 9 in the former constitution, listing prohibited types of special, private or local laws, with the corresponding provisions in the new constitution, shows variations in language as to five, none appear to be intended as substantive changes but rather to serve the committee's objective of "rephrasing * * * without changing the sense."
We consequently conclude that the constitutional purview of "management and control" should not be held to be narrower than "management and support," and that the act now under examination falls within the category of the former.
*530 In any event, in regulating the quantum of contributions from municipalities toward governmental purposes, L. 1965, c. 175, falls into the category, under the cited constitutional provision, of "(13) Regulating the internal affairs of municipalities * * *." Jersey City v. Zink, 133 N.J.L. 437, 447-449 (E. & A. 1945). As to this, defendants present no serious rebuttal.
We thus arrive at the disputed issue whether L. 1965, c. 175, is a special or local law at all, as contrasted with a general law. In the constitutional sense, every law is either general or special (or local or private). In Harvey v. Board of Freeholders of Essex County, 30 N.J. 381, (1959), the court said:
In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. * * * if no one is excluded who should be encompassed, the law is general. Another requirement of a general law is that it must affect equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. [at 389]
One of the leading cases is Koons v. Board of Commissioners of Atlantic City, 134 N.J.L. 329 (Sup. Ct. 1946), aff'd o.b. 135 N.J.L. 204 (E. & A. 1947). There an act had been passed which permitted any city with a population of 50,000 and which bordered on the Atlantic Ocean to levy a retail sales tax. In effect, although not by name, the act applied only to Atlantic City. The ostensible purpose of the act was to permit the raising of additional revenues by seaside municipalities recently ravaged by a hurricane. The court found no valid basis for this classification since there were smaller communities similarly affected but in effect excluded from the act. It found that there was no basis to differentiate according to population except to exclude these other communities that faced a similar problem. It held that "the particular statute was designed for the relief of but one municipality of a group similarly circumstanced, *531 and therefore it is special and local in the constitutional sense." 134 N.J.L., at 337. The reason was that "It has the vice of discrimination against members of a class to which the subject matter of the legislation reasonably and naturally relates." ed., at 337. The test laid down (at 332-333) to distinguish a local law from a general one was:
The test is whether the statutory class has a logical and reasonable basis, free from artificiality and arbitrariness, embracing all and omitting none naturally falling into that category. Is the legislation of such a character as that it is equally appropriate to all forming the statutory class, and is that class embracive of all in like situation and circumstances, and therefore natural members of the class? If, viewed in the light of the legislative design, the necessity and propriety of the classification reasonably appears, it is not within the constitutional interdict.
We are bound to approach the question posed with an initial presumption of constitutionality of the legislative enactment, Jamouneau v. Harner, 16 N.J. 500, 515-516 (1954), and have done so here. But the presumption has vanished in the face of the fact not merely that the law in question applies, and was plainly intended to apply, only to the Shrewsbury-New Shrewsbury situation, but that no conceivable purpose or object of the law can rationalize the exclusion from its operation of all the regional school districts noted above to be so excluded as a result of the legislative criteria for the school districts designated for inclusion. See Budd v. Hancock, 66 N.J.L. 133, 135-136 (Sup. Ct. 1901); City of Bayonne v. Palmer, 90 N.J. Super. 245, 283-284 (Ch. Div. 1966), aff'd 47 N.J. 520 (1966).
Ostensibly, this is a law designed to compel certain regional school districts to apportion costs of annual or special appropriations for school purposes among constituent municipalities on a cost-per-pupil basis whether or not there has been any prior establishment of the regional district on an assessed valuation apportionment basis  i.e., a mandate for apportionment on the per-pupil basis *532 in such districts. The act is not geared to criteria suggesting the rational inappropriateness, unfairness, or other kind of unsuitability of the assessed valuation basis for apportionment in relation to the municipalities in the districts affected. Nor do defendants suggest any reason why mandated employment of the cost-per-pupil basis is not as appropriate to regional districts formed prior to January 1, 1957 as to those formed subsequently, see Alexander v. City of Elizabeth, 56 N.J.L. 71, 23 L.R.A. 525 (Sup. Ct. 1893); or as appropriate to districts comprised of more than two municipalities as to those consisting of only two; or as appropriate in cases where the high school district was formed subsequent to the formation of the regional district for all other purposes as where the high school district was formed first; or, indeed, as appropriate where the school district has not entered into a regional high school district but only a regional elementary school district, or vice versa.
The validity of this classification cannot be defended on the assertion that the act is designed to remedy unfairness of apportionments where one constituent municipality has a disproportionate ratio of pupils to assessed valuations as compared with others in the district, since no such criterion is set forth in the act nor is any such relief extended to municipalities so disadvantaged in any other regional school districts. Of course, we cannot assume that this school district is the only regional district in the state where a disproportionate ratio of that nature may exist.
The only justifiable inference on what is before us is that the Legislature sought to relieve a single municipality whose special equities were called to its attention and in doing so designedly excluded all other regional school districts without regard to whether, in any of those, similar imbalances might not exist also appropriately calling for mandating the per-pupil method of apportionment. This is a veritable prototype of impermissible special and local *533 legislation and must be pronounced void. The inquiry is not whether New Shrewsbury has an equitable claim for relief as against Shrewsbury. If there is a proper case for relief, the Legislature may provide for it, but only by a general law or laws (absent proper recourse to the exception provided by N.J. Const. (1947), Art. IV, § VII, par. 10). Chapter 175 is not such.

VII. Other Constitutional Attacks
We find no merit in plaintiffs' contentions that L. 1965, c. 175, deprives them of equal protection of the laws, within the Fourteenth Amendment, and impairs the right of Shrewsbury citizens to vote (passing any question of status of plaintiffs to sue in the latter regard). In view of the conclusions previously arrived at we need not expand on the determinations just stated.

VIII. Relief
It appears clear to us that equitable considerations preclude affording Shrewsbury any readjustment of apportionments for school years earlier than 1968-1969. There is no good reason why this action should not have been instituted prior to December 1967, more than two years after adoption of the enactment complained of. In the meantime New Shrewsbury was reasonably justified in ordering its fiscal affairs on the basis of the altered method of apportionment actually put into effect under the 1965 act.
Once this action was instituted, however, New Shrewsbury was on notice of the asserted illegality, and since the grievance of Shrewsbury is a continuing one it is appropriate to provide for recapture by Shrewsbury of the excess contributed by it beginning with the school year 1968-1969 to the costs in question over the amounts apportionable under the law as it stood prior to L. 1965, c. 175. As to apportionments *534 not yet made, those will, of course, be effected under the provisions of the prior law. On notice to the parties, the trial court may provide by order for the readjustment between the municipalities of the contributions made for the prior school years specified above, in such annual installments, or otherwise, as may seem fair and convenient to the court, by appropriate debits and credits in the course of the apportionments to be made for any year or years not yet apportioned. If necessary for the effectuation of this determination, the Monmouth County Board of Taxation may be added as a party to this action.
The judgment is reversed and the cause remanded to the Law Division for further proceedings conforming with this opinion. No costs.
NOTES
[1] This section is now reflected in N.J.S.A. 18A:13-23. Title 18 of the Revised Statutes of 1937 was revised as Title 18A, N.J.S.A., effective January 11, 1968 (L. 1967, c. 271). References hereinafter will be to Title 18 except when the sense of the text requires reference to Title 18A.