746 A.2d 1018 (2000)
329 N.J. Super. 27
CITY OF JERSEY CITY, Plaintiff-Respondent,
v.
John J. FARMER, Jr., Attorney General of the State of New Jersey,[1] and City of Newark[2], Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1999.
Decided February 29, 2000.
*1019 Patrick DeAlmeida, Deputy Attorney General, for defendant-appellant (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel and Mr. DeAlmeida, on the brief).
Michelle Hollar-Gregory, Corporation Counsel for Department of Law, City of Newark, for defendant-appellant City of Newark, partially relying on the brief of appellant (Melvin Simon, Assistant Corporation Counsel on the reliance letter).
Stephen J. Edelstein, Florham Park, for plaintiff-respondent City of Jersey City (Schwartz, Simon Edelstein, Celso & Kessler, attorneys; Mr. Edelstein, of counsel and on the brief and Stefani C. Schwartz, on the brief).
Before Judges BAIME, WECKER and BILDER[3].
The opinion of the court was delivered by WECKER, J.A.D.
This appeal involves an amendment to the Local Tax Authorization Act, N.J.S.A. 40:48C-1 to -41, specifically to the provision of the Act that allows a municipality with a population of 200,000 or more to enact a local payroll tax. N.J.S.A. 40:48C-19, as amended by L. 1996, c. 33, § 2. The amendment, sometimes referred to as a grandfather clause, retroactively adds a longevity requirement that prevents any otherwise eligible municipality from enacting a payroll tax unless it did so within two years before (but no later than) July 1, 1995.[4] Whereas prior to the 1996 amendment, both Newark and Jersey City were empowered to enact and collect a payroll tax, under the statute as amended Jersey City cannot qualify and only Newark is so empowered.
On cross-motions for summary judgment, the Law Division Judge rejected the State's contentions that Jersey City's lawsuit was barred for lack of standing, as well as by reason of the entire controversy *1020 doctrine. On the merits, the judge held that the grandfather amendment was unconstitutional special legislation in violation of N.J. Const. art. IV, § 7 ¶ 9(6)[5] and severed the provision. However, the judge stayed his judgment pending disposition of this appeal.
On the constitutional issue the judge applied the test of special legislation set forth in Vreeland v. Byrne, 72 N.J. 292, 370 A.2d 825 (1977), and held that (1) the underlying purpose of the Act was to enable large cities to meet a fiscal crisis (or hardship) brought on by local conditions, and (2) the so-called "grandfather" provision of the amended statute, which excludes otherwise qualifying cities that did not collect or enact a payroll tax before July 1, 1995, had no "rational or reasonable basis relevant to the purpose and object of the act." Id. at 301, 370 A.2d 825. Because we disagree with the Law Division Judge's application of the law to the facts before the court, we reverse.
A brief history of the challenged legislation will set the stage for our analysis. The Local Tax Authorization Act, N.J.S.A. 40:48C-1 to -41, first enacted in 1970, allows cities of a certain size to enact certain local taxes, including a payroll tax. The original Act applied to cities having a population greater than 350,000. At the time, Newark's population was 382,417 and Jersey City's population was 260,545.[6] No other New Jersey city had a population greater than 350,000. With a brief exception in 1975[7], until the qualifying population size was reduced to 200,000 in 1990, only Newark qualified by population to enact a payroll tax under the Act. In 1981, the Act was amended to authorize cites of 300,000 to enact the local tax. L. 1981, c. 462, § 38 ("An Act Concerning the Effects of the Census of 1980"). The 1980 Census shows Newark with a population of 223,532. After the 1990 census, which revealed that Newark's population had decreased to 275,221 and Jersey City's had increased slightly to 228,537, the population requirement of the Local Tax Authorization Act was amended to apply for the first time to cities of 200,000 or more. L. 1990, c. 9.
Although Jersey City became eligible as of the 1990 amendment, it did not enact a payroll tax until December 6, 1995. On December 26, 1995, one day before the local payroll tax would have become effective in Jersey City, a referendum petition was filed as permitted by the Faulkner Act, N.J.S.A. 40:69A-1 to -210. Although that petition was later withdrawn, the Supreme Court held that its filing delayed the effective date of the Jersey City payroll tax ordinance from December 27, 1995, until January 27, 1996. Hudson County Chamber of Commerce v. Jersey City, 310 N.J.Super. 208, 708 A.2d 699 (App.Div.1997), aff'd in part o.b., 153 N.J. 254, 708 A.2d 690 (1998).
Legislation enacted on June 17, 1996, retroactive to January 1, 1996, amended section 19 by extending the sunset provision of the Act to December 31, 1999; the amendment also added for the first time a provision that excluded municipalities that had not collected payroll taxes or enacted a payroll tax ordinance within two years prior to July 1, 1995. See L. 1996, c. 33, § 1. Thus Jersey City never could qualify, *1021 and Newark remained the only city permitted to collect a local payroll tax. It is that retroactive exclusion that Jersey City challenges.
The challenged provision here has been referred to as a grandfather clause, as described in Paul Kimball Hospital v. Brick Twp. Hosp.:
Grandfather clauses operate to exempt from the requirements of legislative enactments certain defined individuals or entities that, at the time the requirements become effective, meet specific defined criteria.
[86 N.J. 429, 440-41, 432 A.2d 36 (1981).]
The provision we consider differs from the typical grandfather clause in that it creates a prior condition, enactment of a payroll tax, that no other municipality can meet in the future. Describing the provision as a longevity requirement would be more accurate. See, e.g., Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 495, 628 A.2d 288 (1993), cert. denied sub nom. City of Bayonne v. Town of Secaucus, 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994).

I.
The State's first argument is that "[Jersey City], lacks standing to raise a claim against the State with respect to the delegation of municipal taxing authority by the Legislature." The issue as we see it is not one of "standing" but rather of justiciability;[8] that is, can the judiciary hear Jersey City's claim, or does the challenged legislation address a political question on which the court may not intervene? There can be no doubt that the municipality is a creature of the State, and has only such powers as the State may grant. See, e.g., Hunter v. City of Pittsburgh, 207 U.S. 161, 178-79, 28 S.Ct. 40, 46-47, 52 L.Ed. 151, 159 (1907). Holding that it had no authority to hear the City's federal constitutional challenge to state legislation, the United States Supreme Court said:
In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. (Emphasis added.)
[Id., 207 U.S. at 179, 28 S.Ct. at 47, 52 L.Ed. at 159 (emphasis added).]
That proposition, however, does not restrict a municipality's right to challenge state legislation, in state court, under the state's own constitution. Indeed, by assuming that the state legislature would have "conform[ed] its action to the state Constitution," the Court suggests just the opposite.
In Alfred Vail Mutual Ass'n v. Halpin, 107 N.J.Super. 517, 259 A.2d 477 (App.Div.1969) aff'd sub. nom. Alfred Vail Mutual Ass'n v. Borough of New Shrewsbury, 58 N.J. 40, 274 A.2d 801 (1971), Judge Conford rejected the contention of two of the defendants, the Speaker of the Assembly and the President of the Senate, that the plaintiffs, a municipality and a taxpayer, could not proceed on their claims that a statute violated the constitutional prohibition against special legislation.
If the named plaintiff had no status to sue, the constitutional issues would still require determination since plaintiff municipality, Township of Shrewsbury, unquestionably is a proper party plaintiff.

[Id. at 527, 259 A.2d 477 (emphasis added.) ]
In In re Charter School Application of Englewood, 320 N.J.Super. 174, 727 A.2d 15 (App.Div.1999), certif. granted, 162 N.J. 481, 744 A.2d 1205 (1999), recognizing some authority for the proposition that a municipality may not challenge legislation affecting municipal budgets, Judge King wrote for this court that we would nevertheless follow decisions that had "taken a *1022 less formalistic approach, in the interest of reaching the merits of a public-policy controversy." Id. at 234, 727 A.2d 15.
In support of its challenge to Jersey City's right to maintain this suit, the State contends that because the legislature "is vested with the sole ability to grant and repeal municipal taxing power ... a municipality [cannot] compel the Legislature through judicial decree to expand a local government's powers." The State misconstrues the issue, and its reliance upon McKenney v. Byrne, 82 N.J. 304, 412 A.2d 1041 (1980), and Glassboro Borough v. Byrne, 141 N.J.Super. 19, 357 A.2d 65 (App.Div.), certif. denied, 71 N.J. 518, 366 A.2d 674 (1976), is misplaced.
In McKenney v. Byrne, the Court addressed a municipal challenge to a statute apportioning certain tax receipts. The Court rejected plaintiff's equal protection argument on the merits, because "the apportionment ratio is predicated on the same standards for all municipalities." Id. at 317, 412 A.2d 1041. Also finding no violation of the prohibition on special legislation, Justice Schreiber nevertheless wrote for the Court:
The burden of mounting a successful challenge on equal protection grounds under the state Constitution in view of the circumstances here is no different from that which prevails under the federal Constitution. Although the sovereign power reposing in the people is exercisable by the Legislature, the exercise of that power must not violate the right to equal protection which the people have included in the Constitution. See State v. Saunders, 75 N.J. 200, 225-226, 381 A.2d 333 (1977) (Schreiber, J., concurring). We must consider the "apparent public justification" of the statute to "decide whether the State action is arbitrary." Robinson v. Cahill, 62 N.J. 473, 492, 303 A.2d 273, 282 (1973).

[Id. at 317, 412 A.2d 1041.]
Defendant relies on these comments in the McKenney opinion:
Recognizing the need to find a constitutional provision, plaintiffs have relied upon the federal and state equal protection clauses, and upon two provisions of the New Jersey Constitution (1947), Art. IV, § VII, par. 9(6) and 9(13), relating to special legislation. We find none of these provisions applicable. It is doubtful whether any of the municipalities may attack the legislation on these grounds.[FN4]
FN4. Whether a municipality has standing to raise these issues is questionable. It has been held it is not a "person" entitled to the benefit of the Equal Protection Clause of the Fourteenth Amendment. [citations omitted.] Furthermore, being a political subdivision and creature of the state, a municipality might not fall within the protective mantel of the cited state constitutional provisions. See Glassboro Borough v. Byrne, 141 N.J.Super. 19, 357 A.2d 65 (App.Div.1976), certif. den. 71 N.J. 518, 366 A.2d 674 (1976)....
[Id. at 315, 412 A.2d 1041 (emphasis added).]
McKenney describes as "questionable" a municipality's standing to challenge the formula for apportioning proceeds from a tax on public utilities' gross receipts as special legislation, citing Glassboro Borough v. Byrne. However, Glassboro involved a challenge to certain line items in an appropriations act, which we held to "represent an exercise of legislative judgment" that did not raise "any justiciable issue...." 141 N.J.Super. at 24, 357 A.2d 65. See also City of Camden v. Byrne, 82 N.J. 133, 149, 411 A.2d 462 (1980) ("There can be no redress in the courts to overcome either the Legislature's action or refusal to take action pursuant to its constitutional power over state appropriations.") Each of these cases involved legislative appropriations, classically the exclusive domain of that branch of government. Jersey City's challenge is distinguishable from McKenney, Glassboro and Camden in that Jersey City is not challenging an allocation or appropriation of tax monies collected by the State. In fact, Jersey City does not challenge the Legislature's power to enact rational classifications that would to *1023 grant Newark alone the right to enact a payroll tax.[9] Plaintiff challenges only the after-the-fact aspect of the 1996 amendment to section 19, which effectively grandfathered Newark but not Jersey City.
We agree with the motion judge's ruling that the plaintiff had the right to bring this action to the courts:
The challenge is not aimed at the discretionary authority of the legislature to repeal municipal taxing privileges. The issue is whether the legislature acted in conformity with the requirements of the New Jersey constitution. That is an important public question appropriately raised by an affected municipality. Indeed if Jersey City, by its duly elected officials, lacked standing to challenge the recent amendment to N.J.S.A. 40:48C-19 as special legislation, it is unlikely that the question could be raised at all.
We also agree with Judge King that we should "reach[ ] the merits of a public policy controversy." We therefore reject the State's contention that the Law Division "lacked jurisdiction to entertain [Jersey City's] claims...."

II.
There is insufficient merit to the entire controversy issue to warrant extended discussion in a written opinion. See R. 2:11-3(e)(1)(E). Suffice it to say that it was not an abuse of discretion to conclude that plaintiff had no obligation to bring this challenge to amending legislation that was enacted after the prior suit, Hudson County Chamber of Commerce, had been decided at the trial level and while it was on appeal. We add only brief explanation.
Defendant invokes the entire controversy doctrine based on the Hudson County Chamber of Commerce lawsuit. That case was decided in the Law Division on May 17, 1996, before the legislation extending the sunset provision of N.J.S.A. 40:48C-19 to December 31, 1999 was approved on June 17, 1966. L. 1996, c. 33, § 2. Because the Jersey City ordinance on its face imposed a tax on services performed in "the calendar quarter in which this ordinance takes effect," and because of the sunset date of the Act, the ordinance potentially applied only to the fourth quarter of 1995, and then only if the ordinance was deemed to have taken "effect" in December, before the sunset of the enabling statute. The Law Division Judge concluded in that lawsuit that Jersey City's payroll tax ordinance, which was adopted by the council on December 6, 1995, and by the mayor on December 7, 1995, and which would ordinarily have become effective twenty days later on December 27, 1995, did not take effect because the referendum petition was filed on December 26. That petition was withdrawn in January 1996, and the ordinance did not take effect until after the withdrawal, on January 26, 1996.
The Law Division decision was filed on May 17, 1996, before the June 1996 amendment to N.J.S.A. 40:48C-19. That decision was affirmed on appeal. Hudson County Chamber of Commerce, 310 N.J.Super. 208, 215, 708 A.2d 699 (App.Div.1997), aff'd in part o.b., 153 N.J. 254, 708 A.2d 690 (1998). The June 1996 legislation at issue here obviously was not the subject of the Chamber of Commerce suit, nor was Jersey City obligated to raise it on appeal, and the entire controversy doctrine is inapplicable.

III.
The motion judge correctly set forth the legal standard applicable to a special legislation challenge, citing Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 486 A.2d 305 (1985) and Vreeland v. Byrne, 72 N.J. 292, 370 A.2d 825, (1977). The judge agreed with the State's contention that
the legislature could merely have provided that no municipality which had not *1024 adopted a payroll tax by the effective date of the amendment, could impose such a tax in the future. That would have been a prospective declaration of a policy consistent with the discussion of grandfather clauses in the Paul Kimball Hospital [v. Brick Twp. Hosp., 86 N.J. 429, 432 A.2d 36 (1981) ] case.
However, he found "no rational basis for this exception to the application of the grandfather clause." In other words, the judge based his decision on finding the July 1, 1995 cut-off date irrational. We are constrained to disagree with the judge's application of the Vreeland principles to the "specific terms" of the amendment to section 19 and therefore with his conclusion that the longevity or "grandfather" provision has no rational basis.
Every statute bears a presumption of validity that is not readily overcome. Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222, 486 A.2d 305 (1985); Paul Kimball Hospital, 86 N.J. at 447, 432 A.2d 36. "Where alternative interpretations of a statute are equally plausible, the view sustaining the statute's constitutionality is favored." Town of Secaucus v. Hudson County Bd. Of Taxation, 133 N.J. at 492, 628 A.2d 288 (1993), cert. denied sub nom. City of Bayonne v. Town of Secaucus, 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994). A statute must "clearly and irremediably violate[ ]" the ban on special legislation to be invalidated. Town of Secaucus, 133 N.J. at 493, 628 A.2d 288. The "Legislature has wide discretion in determining the perimeters of a classification ... and an adequate factual basis for the legislative judgment is presumed to exist." Paul Kimball Hospital, 86 N.J. at 446-47, 432 A.2d 36 (citations omitted). As the Supreme Court said in Paul Kimball Hospital:
The fact that only one entity that meets the specific provisions of the amendment has been identified thus far does not render legislation special. The test is, as we have seen, whether any health care facilities have been excluded that should have been included. Irrespective of whether any other hospital fits into the category, it is settled that a class of one is constitutionally permissible. Bayonne v. Palmer, 90 N.J.Super. 245, 284, 217 A.2d 141 (Ch.Div.1966), aff'd, 47 N.J. 520, 221 A.2d 741 (1966) ("The mere fact that a class will embrace but one entity which is distinct from all others, does not in itself mean that legislation affecting the one entity must be regarded as a special, private or local law"); Budd v. Hancock, 66 N.J.L. at 136, 48 A. 1023 ("If ... this act is special only in the sense that its object is single, the question of its special character in a legal sense does not arise").
[86 N.J. at 448-49, 432 A.2d 36 (footnote omitted).]
See also Mahwah Tp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 285, 486 A.2d 818 (1985). The real test is not who the classification includes, but whether it excludes some who should be included. See Mahwah, 98 N.J. at 292-94, 486 A.2d 818; Secaucus, 133 N.J. at 497-99, 628 A.2d 288.
Our Supreme Court has likened the special-legislation analysis to an equal protection analysis. See McKenney v. Byrne, 82 N.J. at 317, 412 A.2d 1041; Paul Kimball Hospital, 86 N.J. at 446, 432 A.2d 36. The question boils down to whether the court can perceive any rational basis for the legislative classification whose impact, whether positive or negative, falls on a single person or entity.
Jersey City's constitutional challenge is brought not under Article I, paragraph 1 of the New Jersey Constitution, the equal protection clause, but as special legislation prohibited by Art. IV, § 7, ¶ 9(6). Nevertheless, to the extent that the standard for addressing a challenge as special legislation has been likened to an equal protection analysis, we note the "balancing test" employed by our courts in judging an equal protection challenge: "whether there is an appropriate governmental interest that is suitably furthered by the differential *1025 treatment." In re Charter School Application, 320 N.J.Super. at 237, 727 A.2d 15 (citing Rutgers Council of AAUP v. Rutgers, 298 N.J.Super. 442, 452, 689 A.2d 828, (App.Div.1997), certif. denied, 153 N.J. 48, 707 A.2d 151 (1998)).
In Greenberg v. Kimmelman, 99 N.J. 552, 494 A.2d 294 (1985), Justice Pollock explained the New Jersey Supreme Court's "independent analysis" of equal protection claims by "employ[ing] a balancing test."
In striking the balance, we have considered the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction.
[Id. at 567, 494 A.2d 294 (citations omitted).]
Viewed under this test we note first the nature of the affected right. Jersey City has no right to enact a payroll tax unless the State grants it that power. The right Jersey City maintains before us is to be free of irrational exclusion from the empowering act by retroactive revocation of its power to enact a payroll tax. Second, the extent of the intrusion is total. The restriction in the amending statute totally eliminates Jersey City's power to tax. Third, "the public need for the restriction" essentially incorporates a rational basis test, and points us to the legislative history of the Act as a whole.
The power to enact a municipal payroll tax was first granted to Newark in 1970, in the aftermath of the 1967 riots in that city. The widespread devastation and resulting fiscal crises existing at that time are well-documented. Newark enacted the payroll tax when it was permitted to do so, and has continued to collect the payroll tax ever since. Newark's continuing fiscal problems, notwithstanding the current, well-publicized downtown rejuvenation, are well-known.
We agree with the Attorney General that the 1996 longevity amendment to section 19 permissibly limited the power to enact a local payroll tax to Newark, as the only municipality that had actually enacted and relied upon such a tax before the expiration of the then-existing empowering statute. Newark relied on monies collected through the payroll tax for almost thirty years. Jersey City, which is excluded under amended section 19, did not enact the tax between 1990 and 1995, when it was eligible to do so, and has never relied on collecting that tax. We note that Newark's ability to continue to collect a payroll tax has no effect upon Jersey City. This is not a case where Newark's benefit inures to Jersey City's detriment. Compare Mahwah and Secaucus, where the result of allowing a tax benefit to one municipality was to increase the tax burden on others.
Moreover, unlike the grandfather cases cited by plaintiff, the underlying statute includes a sunset provision that guarantees that the Legislature will reexamine the longevity provision before enacting a further extension. While the sunset provision has been repeatedly extended, its inclusion in section 19 is some evidence of the Legislature's reluctance to permit municipalities to enact and collect a local payroll tax except in extraordinary circumstances.[10]
*1026 The burden is on the party challenging the statute "to demonstrate clearly that it violates a constitutional provision." Mahwah, 98 N.J. at 283, 486 A.2d 818. In Mahwah and Newark Superior Officers Ass'n, 98 N.J. 212, 486 A.2d 305 (1985), the Supreme Court found grandfather/longevity provisions to be unconstitutional special legislation because there was no discernible rationale for engrafting a longevity requirement upon an otherwise rational categorization. Here we find it reasonable for the Legislature, in the context of empowering a municipal payroll tax for a term of years, to extend that term only for a municipality that has previously enacted and relied on the tax.
Plaintiff contends, as the law division judge found, that the retroactive July 1, 1995 cut-off date for the municipality to have enacted the payroll tax in order to retain the right to collect the tax under section 19 is arbitrary. The focus of the rational-relationship test is properly upon the imposition of any retroactive longevity requirement, and not on the specific cut-off date, July 1. In any event, whether July 1 was an arbitrary cut-off date is a moot point in light of Jersey City's failure to enact its tax to be effective before the then effective sunset date, December 31, 1995. Jersey City cannot claim to have met the December 31 deadline. See Hudson County Chamber of Commerce, supra. Moreover, we can perceive one rational basis for the earlier July 1 date already mentioned: only a municipality that had not only enacted but also collected[11] and relied on the tax in at least one budget year should receive the benefit of the extended term.
We see a substantial similarity to Paul Kimball Hospital. There the Health Care Facilities Planning Act, N.J.S.A. 26:2H-1 to -26, established a certificate-of-need procedure as a prerequisite for opening a new hospital. The challenged grandfather provision exempted a non-profit corporation in a municipality that had appropriated construction funds before the effective date of that Act. Like the payroll taxing power before us, the power to build a hospital was accorded only to one (or possibly two) entities which were to be located in a municipality that had already taken a specified, affirmative step to avail itself of the privilege. The affirmative step in that case was the municipality's appropriation of funds; here it was enactment of a payroll tax ordinance. It is not irrational in the constitutional sense to distinguish between a municipality that took advantage of the granted taxing power it had and one that did not.
Moreover, in the case of the payroll tax, there is an obvious State interest in strictly limiting the municipalities that collect such a tax. The original enactment was expressly intended to assist the City of Newark in addressing its unique financial problems. Newark took advantage of the opportunity to enact a payroll tax early on, and continued to collect the tax thereafter.
The test of special legislation requires us to consider whether any person or entity excluded by the statutory classification should have been included because there was no rational explanation for the exclusionary classification. Jersey City might have challenged the subsequent amendment with, for example, evidence to compare its urban problems and financial need with that of Newark, thereby proving an irrational exclusion that might satisfy the test of special legislation. No such evidence was offered, and Jersey City has not attempted to compare its needs with those of Newark.
Jersey City admits that legislation that applies to only one or very few municipalities is not per se invalid special legislation. The City correctly argues that a grandfather clause superimposed on such a statute *1027 must itself bear some rational relationship to the underlying purpose that justifies the substantive provisions. Plaintiff relies upon Mahwah, Newark, and Secaucus, for the further contention that the grandfather provision of the 1996 amendment bears no rational relationship to the municipal payroll tax statute.
On the face of it, Jersey City's reliance on Newark, Mahwah and Secaucus, appears to have merit. In each case, the Supreme Court found a grandfather or longevity provision to be special legislation. Closer analysis reveals the distinguishing characteristics of each case.
Newark and Mahwah were decided by the Supreme Court on the same day; both involved grandfather clauses engrafted onto statutes that originally benefitted only one or two municipalities, thereby insuring that no other municipality would qualify in the future. In each case, the original statute was upheld, but the grandfather amendment was found to be unconstitutional special legislation.
In the Newark case, an organization of deputy police chiefs challenged as special legislation the statute allowing mayors of cities of the first class which had a "Mayor-Council Plan C" form of government to appointment the municipal police chief, exempting that position from civil service rules. 98 N.J. at 216, 486 A.2d 305. Only Newark and Jersey City met those conditions. Id. Thereafter, the statute was amended to provide that it would apply only to cities that had previously adopted that plan of government, thereby ensuring that no other city could ever qualify. Id. at 218-19, 486 A.2d 305. Applying the principles set forth in Paul Kimball Hospital, and Vreeland, the Supreme Court found the original act constitutional: "Although the act is applicable only to Newark and Jersey City, no other similarly-situated municipality is excluded. There is no other city in this state that meets the population requirement of the act," Newark, 98 N.J. at 224, 486 A.2d 305, and "population can form a valid basis for legislative classification." Id. at 225, 486 A.2d 305. The Court stated the basic rule for addressing an allegation of special legislation:
Ultimately, the generality or speciality of a statute becomes a question of reasonableness. There is no general rule to distinguish a reasonable from an unreasonable classification, the question being a practical one varying with the facts in each case. As stated previously, where the question of reasonableness is fairly debatable, courts will uphold the classification. The burden of showing that the classification is not reasonable is upon the party attacking the statute. If we can conceive of any reason to justify the classification, the statute will be upheld.

[Id. at 227, 486 A.2d 305.]
Applying that rule, the court found "a reasonable relation" between the population of the two cities and the law removing the police chief position from the civil service process, and the classification therefore was not arbitrary. Id. at 228-30, 486 A.2d 305. On the other hand, the Court found no reasonable basis for the grandfather provision:
Applying this standard, we find it difficult to conceive a rational basis for excluding other municipalities that may in the future become first class cities operating under the "Mayor-Council Plan C" form of government. The reasoning that supports the constitutionality of the statute prior to this amendment, ... would apply as well to municipalities that in the future become first class cities operating under the "Mayor-Council Plan C" form of government. Accordingly, we find the amendment to the statute to constitute special legislation in violation of the New Jersey Constitution.
[Id. at 231, 486 A.2d 305 (citations omitted).]
In Mahwah, a Bergen County municipality challenged as special legislation a statute allowing a county tax rebate to *1028 municipalities in first class counties with population over 800,000 if it had within its borders 200 acres or more of land used and occupied by state or county institutions. 98 N.J. at 271, 486 A.2d 818. The original statute was supplemented by a statute barring the rebate to any municipality which had not received the rebate for any prior year, thereby leaving only one municipality that could ever qualify. Id. at 277, 486 A.2d 818. Reiterating the approach set forth in Newark, the Court rejected the challenge to the underlying legislation, despite its initial purpose to relieve an inequity only to Cedar Grove, because (1) the purpose of the act was to relieve the burden on host communities which had to provide additional services on account of the tax exempt properties, and (2) the resulting burden created by the rebate, that is the additional tax to be shared among the county's other municipalities, would be minimized in larger counties. Id. at 290-92, 486 A.2d 818. However, the Court again could find no "rational basis for excluding other municipalities that may satisfy the requirements of [the rebate statute in the future]," and therefore found the grandfather clause to be unconstitutional special legislation. Id. at 293-94, 486 A.2d 818.
In Secaucus, that city challenged a statute that originally exempted any municipality that maintained its own vocational education system from contributing to that portion of the county tax used to maintain the county's vocational school. 133 N.J. at 487-89, 628 A.2d 288. However, by amendment, the benefit was limited to municipalities in a first class county with a population of no more than 700,000, making Hudson County municipalities alone eligible, and further limited the benefit to municipalities whose vocational program had been in existence for at least twenty yearsa longevity requirement. As a result, only Bayonne could qualify. Id.
The Court found "two possible interpretations of [the statute that] on their face reveal a legitimate legislative purpose." Id. at 495, 628 A.2d 288. One was "to address the problem of double contributions by municipalities that have their own vocational programs...." The other "may be to promote the development of local, high quality vocational educational programs within denselypopulated communities." Id. The Court found it "difficult to see" how the population-density and longevity requirements rationally served either purpose because the prospect of double contributions was faced by "[a]t least twenty municipalities within the state, and at least one other municipality within Hudson County ..." and because "if the goal [of the statute] is to encourage the development of high-quality vocational educational programs within densely-populated municipalities, ... to exclude municipalities either in the most-populous counties, i.e., Essex and Bergen, or in less but densely-populated counties like Union and Middlesex, does not seem reasonable." Id. at 495-96, 628 A.2d 288.
To accept the classifications contained in [the statute] as having a rational basis, one must imagine that the Legislature had some reasonable ground for encouraging the development of local vocational programs only in the most-densely-populated county in the state with a total population below 700,000, and that the Legislature had reasonable grounds for concluding that only those programs in existence for at least twenty years were of sufficient quality to be worthy of financial encouragement through tax relief. Those conclusions seem to us to stretch credulity beyond reasonable limits.

[Id. at 498, 628 A.2d 288.]
The statute therefore was declared unconstitutional special legislation.
In each of the three aforementioned cases, the court found no rational relationship between the challenged grandfather or longevity provisions and the underlying purpose of the Act. Because we are mindful of the duty to "seek any conceivable rational basis" for the challenged longevity *1029 requirement, see Mahwah, 98 N.J. at 286, 486 A.2d 818, and because we have found a rational basis for the longevity requirement in Newark's years of reliance on the tax to solve its unique financial problems, we conclude that Jersey City has not met its "burden of demonstrating clearly the constitutional violation." Secaucus, 133 N.J. at 509-10, 628 A.2d 288. Although we recognize that reasonable persons might differ on the constitutionality of the grandfather provision that effectively excludes Jersey City and includes only Newark, our Supreme Court has emphasized "the long established principle of deference to the will of the lawmakers whenever reasonable men might differ as to whether the means devised to meet the public need conform to the Constitution .... [and] the equally-settled doctrine that the means are presumptively valid, and that reasonably conflicting doubts should be resolved in favor of validity." Roe v. Kervick, 42 N.J. 191, 229, 199 A.2d 834 (1964).
We reverse.
NOTES
[1] See R. 4:34-4.
[2] The City filed no separate brief.
[3] Judge Bilder did not participate in the argument of this case. He has been added with consent of all counsel.
[4] As amended by L. 1996, c. 33, N.J.S.A. 40:48C-19 (hereinafter "section 19") provides:

No tax shall be imposed under any ordinance adopted pursuant to this article with respect to services performed prior to January 1, 1971, or in a calendar quarter prior to that in which the ordinance is adopted, or in a municipality that has not within two years prior to July 1, 1995 collected taxes or enacted an ordinance imposing a tax, or on or after December 31, 1999; but any such ordinance shall remain in effect with respect to the right of the municipality to receive reports and enforce and collect taxes due thereunder for any period prior to December 31, 1999.
Section 19, including the challenged grandfather provision, has recently been extended through December 31, 2004. S. 1241, 208th Leg., Third Reprint (N.J.2000).
[5] N.J. Const. art. IV, § 7, ¶ 9(6) provides in pertinent part:

The Legislature shall not pass any private, special or local laws ... (6) relating to taxation or exemption therefrom.
[6] These figures reflect the 1970 census.
[7] L. 1975, c. 20 authorized cities with a population greater than 250,000 but less than 350,000 to enact an employee payroll tax. N.J.S.A. 40:48D-1 to -10, repealed by L. 1981, c. 462, § 57 (eff. January 1, 1982). The original authorization was for one year only, to expire on December 31, 1975, but was apparently extended several times, finally expiring on December 31, 1981. Jersey City's population did not meet the minimum after 1975. Jersey City's population had decreased from approximately 260,000 in 1970 to just over 250,000 estimated in July 1973, to 243,756 according to the July 1, 1975 Census Bureau estimate.
[8] See generally, Harold A. Olsen, Note, Procedural Barriers to Suits Against the State by Local Government, 62 Brook. L.Rev. 431 n. 169 and accompanying text (1996).
[9] Plaintiff conceded this legislative power at oral argument, as well as in its brief.
[10] The State has called our attention to the Revaluation Relief Act of 1999, N.J.S.A. 54:1-35.51 et seq., implying that Jersey City could be empowered to enact a payroll tax thereunder. That Act provides that "notwithstanding any provisions of ... [N.J.S.A. 40:48C-19] to the contrary, a municipality as defined in [N.J.S.A. 40:48C-1] that undertakes a revaluation by entering into a contract approved by the director [of the Division of Taxation] for the completion of a revaluation, and enters into that contract within 360 days of [September 21, 1999] is authorized to impose the [payroll and parking] taxes authorized by the Local Tax Authorization Act until January 1 of the fourth year next following the revaluation year or until the date on which the tax expires, whichever is later." The Act mandates that "all monies received by the City of Newark pursuant to [such] a tax ... shall be used for the sole purpose of funding revaluation relief abatements." N.J.S.A. 54:1-35.54. This Act does not affect Jersey City's claims with respect to section 19.
[11] Section 19 prohibits collection for any quarter prior to the quarter in which the payroll tax is enacted.