BIANCO, J.T.C.
This opinion shall serve as the court’s determination of cross motions for summary judgment filed by the parties in the above matter. Plaintiff, Horizon Blue Cross Blue Shield of New Jersey (hereinafter “Horizon”) seeks a declaration that N.J.S.A. 54:18A-6 (hereinafter the “Premium Tax Cap Statute”) is unconstitutional as amended by Assembly Bill A4401/Senate Bill S3006 (hereinafter *297 “A4401”). In addition Horizon seeks a refund in excess of $145,000,000 paid pursuant to A4401, and to restrain and enjoin the Defendants from imposing and collecting any additional taxes based on A4401. Defendant, Director, Division of Taxation (hereinafter “the Director”), arguing on behalf of all the Defendants with respect to these motions, seeks to uphold the constitutionality and enforceability of the Premium Tax Cap Statute as amended, and deny any refund to Horizon.
For the reasons set forth below, the court finds that the Premium Tax Cap Statute is constitutional as amended. Accordingly, the Director’s motion for summary judgment is granted and Horizon’s motion for summary judgment is denied.
The facts in this case are not in dispute. Prior to the enactment of A4401 now at issue, the Premium Tax Cap Statute provided:
In the event that the taxable premiums collected by any company, as specified in sections 2 and 3 of this act, and all of its affiliates as defined in the chapter entitled “Insurance Holding Company Systems,” P.L.1970, c. 22 (C.17:27A-1 et seq.), during any year ending December 31, exceed twelve and one-half percentum (12 1/2%) of the total premiums collected by the company and all of its affiliates during the same year on all policies and contracts of insurance, whenever and wherever issued, the taxable premiums of such company shall not exceed a sum equal to twelve and one-half percentum (12 1/2%) of such company’s total premiums collected during the same year on all policies and contracts of insurance, whenever and wherever issued, calculated as specified in sections 4 and 5 of this act; provided, however, a company to which section 2 of this act (C.54:18A-2) applies shall in no event be deemed to be an affiliate of a company to which section 3 of this act (C.54:18A-3) applies and provided, further, that as to any company licensed in this State prior to June 30, 1984, the taxable premiums of that company shall be calculated without regard to the premiums collected by any affiliate. [L. 1945, c. 132, § 6; amended 1985, c. 294; 1989, c. 315.]
After A4401 was enacted, the Premium Tax Cap Statute was divided into two subsections: subsection a. (hereinafter “the l/8th rule”), contains the identical language cited immediately above; a new subsection b. was added, which provides:
On and after January 1, 2005 the provisions of subsection a. of this section shall not apply to a health service corporation established pursuant to the provisions of P.L.1985, c. 236 (C.17:48E-l et seq.).
[L. 2005, c. 128, § 1, eff. July 2, 2005.]
During all relevant times, Horizon was (and continues to be) the only qualified Health Service Corporation (hereinafter “HSC”) in
*298 New Jersey. To be qualified as an HSC, Horizon had to be “organized, without capital stock and not for profit, for the purpose of (1) establishing, maintaining and operating a nonprofit health service plan and (2) supplying services in connection with (a) the providing of health care or (b) conducting the business of insurance as provided for in this act.” N.J.S.A. 17:48E-l(e) (emphasis added). As the sole HSC, Horizon competed in the market place by providing health care coverage and insurance plans to the citizens of New Jersey. Until 1992, Horizon was fully exempt from premium taxes pursuant to N.J.S.A. 54:18a-!.[1] Thereafter, Horizon became subject to premium taxes, but only to the extent provided for in the Premium Tax Cap Statute before its amendment by A4401.
Sometime prior to the summer of 2005, Horizon and New Jersey state officials entered into discussions pertaining to the possible conversion of Horizon from its not-for-profit status to a for-profit entity.[2] For reasons unclear to the court, Horizon ended these discussions sometime during the summer of 2005.
At this same time, the New Jersey Legislature was working toward the adoption of the annual state budget.[3] As part of the budget process the Legislature considered multiple revenue raising measures. One such measure was Assembly Bill A2917 (hereinafter “A2917”), which was considered, but never enacted by the Legislature. A2917 proposed to give the Commissioner of Banking and Insurance the authority to allocate annually certain excess *299 surplus of HSCs to hospitals for charity care subsidies. See Assem. B. 2917, 211th Leg., Reg. Sess. (NJ.2004). Although the text of A2917 did not specifically mention Horizon, a statement to the bill provided that:
This bill establishes a procedure whereby a portion of certain special contingent surplus monies accumulated by Horizon Blue Cross and Blue Shield of New Jersey ... are allocated annually for the purpose of providing payments to hospitals for charity care subsidies.
[Ibid.]
The Legislature failed to pass A2917.[4] A more detailed discussion of A2917 can be found at the Bill of Attainder section of this opinion, infra.
Also under consideration at that time was A4401, which (as indicated above) amended the Premium Tax Cap Statute to exclude HSCs from the l/8th Rule. A4401, as originally introduced on June 27, 2005, would have eliminated the l/8th Rule for all insurers doing business in the state. Assem. B. 4401, 211th Leg., Reg. Sess. § 6 (N.J. as introduced June 27, 2005).
On June 29, 2005, a meeting of the New Jersey General Assembly Budget Committee convened to discuss A4401 and A2917. Hearing on Assem. B. 44.01 and, B. 2917 Before the N.J. Gen. Assem. Budget Comm., 222nd Leg. (2005). At that meeting several insurers were represented, including Horizon, Prudential, and American Insurance Associates. Prior to the beginning of the meeting, it was announced that A4401 had been amended to exclude only HSCs, rather than all insurers, from the l/8th Rule. During the discussion of A4401, the following dialogue took place:
We have Arthur Herman and Robert Monteleone with Prudential opposed. Are they here? Substitute does not impact that group ... You’re welcome, sir. Yes, thank you. So you’re now in support, I would imagine ... Thank you for that support. Thank you. Say no more, Arthur. Aruthur, say no more. We can always reconsider, you know.
Tony Dixon, chef Executive Officer, New Jersey Manufacturer’s Insurance Company previously opposed; now, look at that smile.
*300 Mi\ Litton then had the following exchange with Assemblyman O’Toole:
Assemblyman O’Toole: This is not your day.
Mr. Litton: No.

[Ibid.]

A4401 eventually passed both houses of the Legislature and was signed into law by the Governor on July 2, 2005.
Horizon filed a complaint with the Tax Court on July 6, 2005 challenging the constitutionality of the Premium Tax Cap Statute as amended by A4401 on several grounds. Horizon contends that A4401 violates the Equal Protection Clause and Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Article I, Section 1, of the Constitution of the State of New Jersey. Furthermore Horizon contends that A4401 is special legislation barred by Article IV, Section 7 of the Constitution of the State of New Jersey and that A4401 is a bill of attainder (i.e. legislation that singles out an individual or group for punishment without a trial), retroactive legislation and a violation of 42 U.S.C. 1983.
On November 10, 2005, some four months following the enactment of A4401 and the filing of Horizon’s complaint, the Legislature passed Assembly Resolution 292, which constituted the Assembly Financial Institutions and Insurance and Health and Human Services Committees as a special committee to investigate the business practices, financial activities and surplus poli *301 cies of Horizon. Assem. Resol. 292, 211th Leg., Reg. Sess. (NJ.2005). The resolution read in pertinent part:
WHEREAS, Horizon exists by virtue of an act of the Legislature, P.L.1985, c. 236 ... as a not-for-profit organization and has received significant and beneficial tax treatment ...; and
WHEREAS, At the same time it was providing health insurance coverage to New Jersey residents, while conducting its business with preferential tax treatment, Horizon has increased its surplus to its current level of one billion dollars; and WHEREAS, Horizon has engaged in discussions with State officials regarding a potential conversion to for-profit status ...; and
WHEREAS, The State of New Jersey, on behalf of its citizens, has a vested interest in the surplus and assets of Horizon, as expressed in the conversion legislation enacted in 2001, which provides for the creation of a charitable foundation that would use these assets to meet some of the State’s health care needs; and WHEREAS, Horizon recently announced that it will not convert to a for-profit company pursuant to the conversion legislation, thus leaving in doubt the State’s vested interest in Horizon’s assets and surplus, their disposition, and the effect of a one billion dollar surplus in relation to Horizon’s obligation to fulfill its mission as a not-for profit entity. [Ibid.] [5]
Both parties have moved for summary judgment.

Summary Judgment

New Jersey’s Court Rules provide that summary judgment is appropriate where:
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. [ñ. 4:46-2(c).J
The moving party sustains the burden to show no genuine issue of material fact exists. Judson v. Peoples Bank and Trust, 17 N.J. 67, 74, 110 A.2d 24 (1954). See also Liberty Surplus Ins. *302 Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 916 A.2d 440 (2007). The opposing party cannot defeat the motion for summary judgment simply by pointing to any fact in dispute. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). Denial of summary judgment occurs when the opposing party brings forward evidence that creates a genuine issue for a material fact. Ibid.
The Court finds, and both parties agree, that the present matter is ripe for summary judgment as there is no genuine issue as to any material fact.

Equal Protection and Due Process

Analysis of A4401 begins with the well accepted principle that the statute is afforded a strong presumption in favor of constitutionality. State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 45-46, 590 A.2d 191 (1991). This presumption is particularly strong given that A4401 amounts to economic legislation. See N.J. Ass’n of Health Plans v. Farmer, 342 N.J.Super. 536, 552, 777 A.2d 385 (Ch.Div.2000) (quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). The Supreme Court of New Jersey has stated that courts must be “mindful of the strong presumption in favor of constitutionality, and the traditional judicial reluctance to declare a statute void, a power to be delicately exercised unless the statute is clearly repugnant to the Constitution.” Paul Kimball Hospital, Inc. v. Brick Township Hospital, Inc., 86 N.J. 429, 447, 432 A.2d 36 (1981) (citations omitted). A party challenging legislation must overcome the presumption of constitutionality that attaches to all legislation. See N.J. Ass’n of Health Plans, supra, 342 N.J.Super. at 550, 777 A.2d 385.
In the realm of taxation “[i]t is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions.” Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 510, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 1253 (1937) (citations omitted). “Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation.” Ibid. Consequently, “inequalities which result from a *303 singling out of one particular class for taxation or exemption, infringe no constitutional limitation.” Id. at 509 (citations omitted). Moreover, the state “is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it.” Ibid, (citations omitted). In summary, states “have especially broad latitude in creating classifications and distinctions in tax statutes.” Regan v. Representation of Washington, 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983).
Since no fundamental right[6] or suspect class [7] is implicated here, the Equal Protection Clause of the United States Constitution and Article I, Section 1 of the New Jersey Constitution [8] requires that the legislation have a legitimate purpose and that any proposed classification of citizens at least bears a rational relationship to the stated legitimate purpose. See Exxon Corp. v. Eagerton, 462 U.S. 176, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983). “[T]he guarantee of substantive due process requires only that the legislation not be unreasonable, arbitrary or capricious and that the means selected to achieve the governmental objectives bear a *304 rational relationship to these objectives.” N.J. Ass’n of Health Plans, supra, 342 N.J.Super. at 564, 777 A.2d 385. Likewise, “the equal protection clause requires some rationality in the nature of the class signaled out.” Id. at 569, 777 A.2d 385 (citing Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966)). “As long as the classification is based on reasonable grounds so as not to be arbitrary and capricious, courts will not substitute their opinion for the determination of the legislature.” Ibid, (citing Zullo v. Board of Health, Woodbridge Tp., 9 N.J. 431, 440, 88 A.2d 625 (1952)). “Corporations are deemed to be persons entitled to the protection of the Equal Protection and Due Process Clauses of the Fourteenth Amendment.” Sixth Camden Corp. v. Evesham, 420 F.Supp. 709, 721 (D.N.J.1976).[9]
Horizon first argues that A4401 is unconstitutional because it is inconsistent with the original purpose of the Premium Tax Cap Statute. Implicit in this argument is the notion that there are no conceivable legitimate state purposes to sustain A4401.[10] Both parties agree that the purpose of the Premium Tax Cap Statute prior to A4401 was to “encourage insurers to conduct more business within the State [of New Jersey].” American Fire and Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 81, 912 A.2d 126 (2006). According to Horizon, A4401 promotes the exact opposite of the intent of the original statute by attempting to “punish Horizon and essentially steal its funds.” In support of this contention, Horizon points to the timing of A4401 (in relation to the breakdown of discussions concerning Horizon’s conversion to a for-profit entity) and A4401’s legislative history.
*305 Horizon’s argument in this regard fails for several reasons. First, as a means for raising revenue, it has long been recognized that states may tax persons or businesses doing business within a state.
Nothing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied.
A tax is not an assessment of benefits. It is ... a means of distributing the burdens of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges in living in an organized society established and safeguarded by the devotion of taxes to public purposes. Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government — that it exists primarily to provide for the common good. A corporation cannot object to the use of taxes which it pays for the maintenance of schools because it has no children. This court has repudiated the suggestion, whenever made, that the Constitution requires the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer, or that he can resist the payment of tax because it is not expended for purposes which are peculiarly beneficial to him. [Carmichael, supra 301 U.S. at 521-23, 57 S.Ct. at 878-79, 81 L.Ed. at 1260-61 (citations omitted).]
The court is satisfied that A4401 represents a Legislative determination that HSCs should pay a tax on all of their premiums, rather than on, at most, twelve and one-half percent (i.e.l/8th) of their premiums. Conceivably, expanding the number of premiums subject to taxation will result in increased revenue for the state, and therefore serves a legitimate state purpose.
Second, Horizon’s argument that A4401 is unconstitutional because it is inconsistent with the original intent of the statute that it amended is conclusory. Horizon cites to no case, and indeed no case has been found by this court, which holds that an amendment to a statute must be consistent with the original intent of the statute it amends in order for there to be a legitimate state purpose which supports the amendment.[11] “The burden is on the *306 one attacking the legislative arrangement to negative every conceivable basis which might support it.” Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590 (1940). Furthermore, while an inconsistency between A4401 and the Premium Tax Cap Statute may exist, “it is not the function of the court[ ] to evaluate the efficacy or wisdom of a particular legislative enactment.” N.J. Ass’n of Health Plans, supra, 342 N.J.Super, at 551, 777 A.2d 385 (citations omitted).
Third, contrary to Horizon’s argument, the timing of the legislation alone is too speculative to evidence a vindictive and retaliatory motive. Horizon’s primary contention in support of its claim of Legislative vindictiveness and retaliation is that the introduction of A4401 on June 27, 2005 occurred immediately after Horizon ended discussions with New Jersey officials about its possible conversion to a for-profit entity. The court notes that as originally introduced, A4401 excluded all insurers, rather than just HSCs, from the Premium Tax Cap Statute. In his certification, William Frantel, Assistant Vice President / Controller of Horizon, attests that “[djuring the summer of 2005, Horizon ended discussions with New Jersey officials____“ (emphasis added). Based on the *307 original language of A4401 and Mr. Frantel’s certification, it is unclear to the court exactly when those negotiations ended and what effect, if any, the end of negotiations may have had on future legislative proceedings. While the timing of A4401 may be cause for suspicion, the court cannot conclude based on mere conjecture that the Legislature has acted improperly. Clearly there is nothing in A4401 itself to suggest this is so.
The United States Supreme Court has cautioned that “[¡Inquires into congressional motives or purposes are a hazardous matter.” U.S v. O’Brien, 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Furthermore, “ ‘[t]he decisions of [the United States Supreme Court] from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted.’ ” Id. at 383, 88 S.Ct. 1673 (quoting McCray v. United, States, 195 U.S. 27, 56, 24 S.Ct. 769, 49 L.Ed. 78 (1904)).[12]
Horizon has failed to establish that A4401 is not supported by a legitimate state purpose.
Alternatively, Horizon argues that even if A4401 was enacted to further a legitimate state purpose, no rational basis exists to direct legislation at Horizon alone. Horizon believes that it is not so unique that excluding it from a tax benefit somehow enhances the State’s ability to achieve a legitimate state purpose. Horizon claims that excluding any company from the l/8th Rule has no rational relationship to the statutory purpose of the Premium Tax *308 Cap Statute as originally enacted, namely to “encourage insurers to conduct more business within the State [of New Jersey].” American Fire and Cas. Co., supra, 189 N.J. at 81, 912 A.2d 126.
“Where taxation is concerned, and equal protection is implicated, the states have a large leeway in making classifications and drawing lines.” N.J. State Bar Ass’n v. Berman, 259 N.J.Super. 137, 146, 611 A.2d 1119 (App.Div.1992) (citations omitted). All that equal protection requires is “some rationality in the nature of the class singled out.” N.J. Ass’n of Health Plans, supra, 342 N.J.Super. at 569, 777 A.2d 385 (citing Rinaldi, supra, 384 U.S. at 309, 86 S.Ct. 1497). Furthermore, “[distinctions which mark an entity or individual as a member of a particular class may be made ‘with less than mathematical exactitude.’” Id. at 570, 777 A.2d 385 (quoting Paul Kimball Hospital, supra, 86 N.J. at 446, 432 A.2d 36).
This court finds that A4401 is not directed at Horizon. Rather in enacting A4401, the Legislature sought to regulate HSCs as a class, of which Horizon is the only member. Equal protection is not violated where a legislative classification consists of a single member. Paul Kimball Hospital., supra, 86 N.J. at 448-49, 432 A.2d 36; City of Jersey City v. Farmer, 329 N.J.Super. 27, 38-39, 746 A.2d 1018 (App.Div.), certif. denied, 165 N.J. 135, 754 A.2d 1211 (2000). When courts consider an equal protection claim, the single-entity “question boils down to whether the court can perceive any rational basis for the legislative classification whose impact, whether positive or negative, falls on a single person or entity.” City of Jersey City, supra, 329 N.J.Super. at 39, 746 A.2d 1018. Horizon attempts to equate itself to other insurance providers in the state of New Jersey. However, a closer look at the historical development of Horizon and its legal status illustrates the rational basis for enacting A4401.
On June 14, 1938 the Legislature enacted L. 1938 c. 366, (effective October 1, 1938), which authorized the establishment of “hospital service corporations.” In that same year, Hospital Ser *309 vice Plan of New Jersey[13] was authorized to operate as an HSC. N.J.S.A. 17:48-18 declares HSCs to be charitable and benevolent institutions, and exempts them from all State, county, district, municipal and school taxes, other than taxes on real estate equipment.
In 1945 the Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -41, (hereinafter “CBT”) was enacted, which imposes tax on non-exempt corporate taxpayers. Health maintenance organizations (hereinafter “HMOs”) organized pursuant to N.J.S.A. 26:2J-1 are subject to the CBT. “Insurance companies” are exempt from CBT, but are liable for the insurance premium tax, subject to the cap of the Premium Tax Cap Statute. It was not until 1992 that HSCs became subject to the insurance premium tax. N.J.S.A. 17:48E-41 and N.J.S.A. 54:18A-9 were amended to provide that, as of January 1, 1992, HSCs would be subject to the tax, but only for “experience rated health insurance.”[14] HSCs remained exempt for their “community rated health insurance.” [15] Further, HSCs were obliged to serve as an insurer of “last resort.”[16] N.J.S.A.. 17:48E-3(d). In 1992, the Individual Health Insurance Reform Act (hereinafter “IHC Act”), N.J.S.A. 17B:27A-1 to -56, was enacted. The IHC Act reduced HSCs’ obligation as the insurer of last resort by requiring all health carriers in New Jersey to either write individual coverage or pay an assessment to fund the losses of the carriers who do write individual coverage.
Pursuant to L. 2004, c. 49, enacted and effective June 29, 2004, the Legislature imposed a one-time 1% assessment on the net written premiums of HMOs to fund charity care payments to hospitals. In addition to imposing the one time 1% HMO assess *310 ment, L. 2004, c. 49, directed the Department of Banking and Insurance (hereinafter “DOBI”) Commissioner and State Treasurer to study revenues received from HMOs and other health care providers subject to CBT and compare those receipts to tax paid by other insurance entities to evaluate the equities of those respective tax schemes. Certification of R. Neil Vance, Exhibit 2(D47). The DOBI and Treasury were asked to address whether New Jersey was appropriately identifying and capturing revenues so as to reflect adequately the volume of business conducted by HMOs, HSCs, and other insurers in the state. Ibid. The study showed that Horizon paid premium tax at an effective rate of .1% while other types of insurers paid at a rate of 1.1%. The Legislature was aware of this disparity prior to signing A4401 into law. The same year the Legislature also passed L. 2005, c. 125 which changed a one-time 1% CBT assessment on HMOs to a recurring annual assessment.
The Legislature did have a rational basis to exclude only HSCs from the l/8th Rule. There was an inequity in the taxing structures of insurance entities. HSCs were afforded a benefit for a period of time because of its unique status as an HSC. Now it is the unique characteristics of HSCs that have caused such preferential treatment to be abandoned. Accordingly, the court finds that A4401 is rationally related to a legitimate state purpose and does not violate Horizon’s constitutional right to equal protection and due process.
Horizon also argues that the State’s authority to regulate the insurance industry and its need to balance the budget does not permit it to create a discriminatory classification or a selective tax exemption that draws an unreasonable distinction between potential sources of revenue. Put another way: the State does not have the authority to single out Horizon to pay higher taxes than all other insurers who meet the pre-A4401 Premium Tax Cap Statute.
Horizon argues that even though exemptions are a matter of legislative grace, rather than a constitutional right, the legislature is prohibited from denying exemptions on a discriminatory basis. See Parker v. Commissioner of Internal Revenue, 365 F.2d 792, *311 795 (8th Cir.1966), cert. denied 385 U.S. 1026, 87 S.Ct. 752, 17 L.Ed.2d 674 (1967) (“The receiving of an exemption is thus a matter of legislative grace and not a constitutional right. As long as exemptions are denied ... on a non-discriminatory basis ... the withholding of religious exemptions is permissible under the Constitution.”). To support its argument, Horizon relies on two foreign cases where discriminatory classification was found.
Horizon first cites State Compensation Fund v. Symington 174 Ariz. 188, 848 P.2d 273 (1993), in which the State of Arizona imposed a flat tax on a single state agency to help balance the state budget and to “level the playing field” by eliminating the special privilege that the agency had over private insurance carriers. Id. at 278. Despite finding that the needs to balance the budget and to level the playing field are legitimate state goals, the Symington court held the tax to be a discriminatory special law because it did not rationally further those two goals. Id. at 278-79.
According to Symington, “[a] law is special and, therefore, unconstitutional if it ‘applies only to certain members of a class or to an arbitrarily defined class which is not rationally related to a legitimate legislative purpose.’ ” Id. at 277 (citations omitted). To determine whether the law in question constituted a special law, the Symington court used a three part test:
A law does not constitute special legislation if (1) there is a rational basis for the classification; (2) the classification is legitimate, encompassing all members of the relevant class; and (:l) the class is flexible, allowing members to move into and out of the class.
{Id. at 278 (citation omitted).]
Even if this court were to apply Symdngton to the present facts the result here would not change. First, the rational basis for the classification is to raise revenue. Even Symington recognizes that raising revenue for the need to balance the state budget is a legitimate state purpose. Ibid. Furthermore, A4401 does not impose a flat tax, which the Symington court found did not further the goal of leveling the playing field. Here A4401 is rationally related to legislative state purposes because it imposes a tax on all premiums collected by HSCs. Second, as discussed above, the *312 classification is legitimate in that it encompasses all members of the HSC class. Finally, the HSC class is flexible as members are free to move in and out.
Second, Horizon cites to Blue Cross Blue Shield of Michigan v. Milliken, 422 Mich. 1, 367 N.W.2d 1 (1985), in which as part of comprehensive health care reform, the state of Michigan directed four provisions at only Blue Cross Blue Shield of Michigan (hereinafter “BCBSM”). Id. at 79-80, 367 N.W.2d 1; 83-84. The Supreme Court of Michigan found three of the provisions unconstitutional because there was no conceivable legitimate governmental interest to direct the legislation only at BCBSM. Id. at 83, 367 N.W.2d 1. As for a fourth provision, the court found it to be constitutional because it arose out of the fact that BCBSM was a health care corporation rather than an insurance company. The Michigan Supreme Court held that, “[t]he state may create separate classifications for regulating various kinds of corporation where the regulation directly relates to the inherent differences between the corporations.” Id. at 84,367 N.W.2d 1.
Finally, even under Blue Cross Blm Shield of Michigan, A4401 survives constitutional challenge since it is a legislative enactment that “directly relates to the inherent difference between the corporations.” Ibid. A4401, like the one provision upheld in Blue Cross Blue Shield of Michigan, addresses a legitimate state interest that is unique to a certain class, i.e. raising revenue by correcting the inequitable taxing of HSCs. The fact that all insurers, including HSCs, have benefited from the Premium Tax Cap Statute in the past does not mean that the State must treat HSCs and other insurers alike moving forward. As discussed above, HSCs and other insurers are different corporate entities that the Legislature may treat differently for taxing purposes.
In summary, Horizon’s reliance on Symington, supra, and Blue Cross Blue Shield of Michigan supra, is misplaced. Horizon has failed to show that the denial of the exemption here is discriminatory. The Legislature directed A4401 at HSCs, corporate entities which have received tax benefits separate and apart from other insurance providers. The State has not created a discriminatory *313 class, but instead has adjusted its tax treatment of HSCs based on a rational basis. See Carmichael, supra, 301 U.S. at 509, 57 S.Ct. 868. The court further notes that Symington and Blue Cross Blue Shield of Michigan are not binding on this court. See American Fire and Cas. Co., supra, 189 N.J. at 80, 912 A.2d 126 (“Finally, we note that the premium tax cap statute is unique to New Jersey, and, therefore, the law of other states does not provide meaningful guidance in this appeal.”).

Special Laws

Horizon contends that A4401 is an impermissible special law under the New Jersey Constitution since it creates a “false or deficient classification” that excludes only Horizon from the l/8th Rule.
The New Jersey Constitution provides in relevant part that “[t]he Legislature shall not pass any private, special or local laws ... relating to taxation or exemption therefrom.” N.J. Const. art. IV, § 7, ¶ 9(6). “The test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws.” Robson v. Rodriquez, 26 N.J. 517, 526, 141 A.2d 1 (1958). “The test, of course, is whether the classification is reasonable, not arbitrary, and can be said to rest upon some rational basis justifying the distinction.” Vreeland v. Byrne, 72 N.J. 292, 299, 370 A.2d 825 (1977). When applying the analysis, courts are to follow a three-part test:
[W]e first discern the purpose and object of the enactment. We then undertake to apply it to the factual situation presented. Finally, we decide whether, as so applied, the resulting classification can be said to rest upon any rational or reasonable basis relevant to the purpose and object of the act.
[Id. at 300-301, 370 A.2d 825 (emphasis omitted).]
Principles applicable to determining if a statute affords equal protection are also applicable when determining if a statute is a special law. Paul Kimball Hospital, supra, 86 N.J. at 446, 432 A.2d 36. Therefore, “a statute is presumed to be constitutional and it will not be declared void unless the statute is clearly repugnant to the Constitution,” and “the burden is on the party challenging the constitutionality of the statute to demonstrate *314 clearly that it violates the constitutional provision.” Mahwah v. Bergen County Board of Taxation, 98 N.J. 268, 282-83, 486 A.2d 818 (1985) (citations omitted). Finally, the New Jersey Supreme Court has long stressed that “[i]n deciding whether an act is general or special it is what is excluded that is the determining factor and not what is included.” Paul Kimball Hosp., supra, 86 N.J. at 446, 432 A.2d 36. In other words:
[A] law is regarded as special legislation “when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes.”
[Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 494, 628 A.2d 288 (1993) (citations omitted).]
As noted above, the purpose or objective of A4401 was to raise revenue and correct an inequity in the state’s taxing scheme of HSCs. To achieve this objective, A4401 excluded all HSCs from the l/8th Rule. Finally, by subjecting all premiums collected by HSCs to taxation the Legislature has created the possibility for increased revenue and has abandoned preferential tax treatment towards HSCs. Consequently, A4401 rests upon a reasonable basis relevant to the purpose and object behind A4401.
The fact that the HSC class consists of one member — Horizon— does not make the amendment special legislation per se. See Paul Kimball Hosp., supra, 86 N.J. at 448, 432 A.2d 36. The inquiry to determine if it is special legislation instead must be whether any other entity should have been included. See ibid. A4401 though encompasses the entire HSC class, which as noted above are unique entities that the Legislature may legislate differently from other insurance entities. As a result A4401 does not exclude entities that should have been included.

Bill of Attainder

According to Horizon, A4401 constitutes a punitive action taken by the Legislature against Horizon for its failure to convert to a for-profit entity at a time when the State was seeking additional revenue to address budgetary shortfalls. This, in Horizon’s view, amounts to an unlawful bill of attainder under both the United States Constitution and the New Jersey Constitution.
*315 Both the United States and the New Jersey Constitutes prohibit bills of attainder, which are “legislative act[s] which [levy] punishment against specified individuals or groups without judicial trial.” In re Coruzzi, 95 N.J. 557, 559, 472 A.2d 546 (1984) (citations omitted). This prohibition applies to statutes that inflict punishment. N.J. Ass’n of Health Plans, supra, 342 N.J.Super. at 577, 777 A.2d 385. A statute, however, does not inflict punishment merely because it imposes burdens upon the citizenry. See Nixon v. Administrator of General Services, 433 U.S. 425, 472, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). If that was the case, “ ‘all legislation regulating economic activity might be considered ‘punishment,’ and broad application of the doctrine could ‘cripple the ability of legislatures to respond to some perceived social or economic problem.’ ” N.J. Ass’n of Health Plans, supra, 342 N.J.Super. at 577, 777 A.2d 385 (quoting Long Island Lighting Co. v. Cuomo, 666 F.Supp. 370, 403 (N.D.N.Y.1987)). The United States Supreme Court has set forth three inquiries to determine whether a statute is an impermissible bill of attainder: “(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, ‘viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes’; and (3) whether the legislative record ‘evinces a congressional intent to punish.’ ” Selective Service System, v. Minnesota Public Interest Research Group, 468 U.S. 841, 852, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) (citing and quoting Nixon, supra, 433 U.S. at 473, 475-76, 478, 97 S.Ct. 2777).
As applied to the present facts, A4401 is not a bill of attainder under the test announced in Nixon, supra. First, the historic definition of punishment encompasses death sentences, imprisonment, banishment, barring attained parties from specified employment and confiscation of property. See Nixon, supra, 433 U.S. at 473-75, 97 S.Ct. 2777. Only the latter category is applicable here. While any tax may constitute a confiscation or taking of property in a literal sense, it has been held that “a bona fide revenue-raising measure is not a ‘taking’ in a constitutional sense.” N.J. Ass’n of Health Plans, supra, 342 N.J.Super. at 553-54, 777 A.2d 385 (citing Houck v. Little River Drainage Dist., 239 U.S. *316 254, 265, 36 S.Ct. 58, 60 L.Ed. 266 (1915) (“[T]he power of taxation should not be confused with the power of eminent domain.”)). A4401 is a bona fide revenue-raising measure and therefore falls outside the historical definition of punishment.
Second, as the above analysis indicates, A4401 may be viewed as furthering non-punitive legislative goals, namely the legitimate state purposes of raising revenue and correcting an inequity in the tax scheme of HSCs. Consequently, A4401 passes the functional inquiry.
Finally, as to the intent to punish inquiry, the evidence cited by Horizon is insufficient to merit a finding that the Legislature acted with any improper intent. With regard to A2917 (see footnotes 4 and 12 supra), which Horizon points out was reported to have been deemed “illegal” by then State Treasurer John McCormac, this proposed legislation was never adopted by the Legislature and never part of legislative history of A4401. “The Supreme Court has held that ‘[p]ending legislation ... is of little value in determining legislative intent.’ ” Hennefeld v. Township of Montclair, 22 N.J.Tax 166, 201 (Tax 2005) (quoting Koch v. Dir., Div. of Taxation, 157 N.J. 1,13, 722 A.2d 918 (1999)).
Furthermore, the “giddy” role call by Chairman Greenwald during the earlier mentioned General Assembly Budget Committee meeting concerning A4401 and A2917 can at best be viewed as some indication that the Chairman might have personally had an improper motive, but is clearly not indicative of the intent of the Legislature when it enacted A4401. “The inquiry ... entails the search for legislative intent, not a search for legislators’ actual intent.” GE Solid State v. Dir., Div. of Taxation, 132 N.J. 298, 320, 625 A.2d 468 (1993) (Handler, J., dissenting) (citing Biggs v. Long Beach Tp., 109 N.J. 601, 613, 538 A.2d 808 (1988) (finding that “Courts generally will not inquire into legislative motive ... but will consider evidence about the legislative purpose----Although the distinction between motive and purpose can be fuzzy, ‘motive’ ordinarily addresses the subjective considerations that move a legislator, and ‘purpose’ speaks to the goals to be achieved”)). Assuming arguendo that some members of the Leg *317 islature held an improper motive, Horizon has failed to show that that motive played a significant part in the legislative process. See State Farm, Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 66, 590 A.2d 191 (1991) (finding that various statements of legislators allegedly evincing a punitive intent were an insignificant part of the extensive debate over insurance reform and therefore did not constitute a legislative intent to punish).
Finally, with regard to AR292 sponsored by Assemblyman Neil M. Cohen and Assemblywoman Loretta Weinberg, this resolution was adopted four months after A4401 was enacted by the Legislature and signed into law by the Governor. Irrespective of the timing of AR292, there is nothing within the plain language of that resolution that suggests to this court any improper intent in the Legislature’s enactment of A4401.

Retroactive Effect

Finally, Horizon makes the argument that the violations of its rights are exacerbated by the retroactive effect of the A4401. Horizon argues that the retroactive change is manifestly unjust because Horizon’s status compared to other insurers did not change at any time and it, like other insurers, reasonably relied upon N.J.S.A. 54:18A-6 in making its business decisions for 2005.
The New Jersey Supreme Court succinctly summarized the standard for manifest injustice in Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 572, 940 A.2d 1202 (2008).
The doctrine of manifest injustice is “designed to prevent unfair results that do not necessarily violate any constitutional provision.” “Hence while our inquiry into whether there has been a ‘manifest injustice’ is informed by our consideration of issues of constitutional due process, it is not necessarily detei’mined by those issues.” In the manifest injustice analysis we “look to matters of unfairness and inequity” in determining whether to apply the doctrine to avoid the retroactive application of a statute. “Because there is no litmus test for decision, we must consider in the weighing process the extent to which” the decedents were not able to change their Wills “in reliance on the existing law ... or had [their] reasonable expectations defeated.” “[R]eliance on existing law by the affected party and the unfairness of changing that law are the important factors in making the retroactivity decision.” In evaluating those factors, a court must weigh “the public interest in the retroactive application of the statute against the affected party’s reliance on previous law, and the consequence of that reliance.”
[Ibid, (citations omitted).]
*318 In Oberhand the Legislature, to avoid a loss of revenue due to changes in the federal estate tax structure, amended a state estate tax provision on July 1, 2002, with a January 1, 2002 effective date. Id. at 573, 940 A.2d 1202. The decedents, both of whom had estate plans written to avoid estate taxes under the previous state law, passed away prior to July 1, 2002 but after January 1, 2002. Ibid. In light of the timing of their deaths and the enactment of the amendment, neither decedent had an opportunity to alter their respective estate plans. Id. at 574, 940 A.2d 1202. After balancing these interests, the Court found that “it would be harsh and unfair to apply the Amendment retroactively.” Ibid.
Under the standards set forth in Oberhand this court must weigh the public interest in the retroactive application of A4401 against Horizon’s reliance on the l/8th Rule and the consequence of that reliance. As discussed above, A4401 stands upon the legitimate state purpose of raising revenue. A4401 on its face also represents a clear legislative determination to exclude HSCs from the l/8th Rule.
Conversely, Horizon has operated under the l/8th Rule since 1992, when its “experience rated health insurance” became subject to taxation. The enactment of A4401 in July 2005 came in the middle of Horizon’s insurance premium tax year. Consequently, Horizon was already liable for an insurance premium tax at the time of the enactment. The effect of the amendment was to increase Horizon’s insurance premium tax liability. The fact that Horizon was already liable for an insurance premium tax distinguishes this case from Oberhand, where the decedents’ estate plans were written to avoid federal and state estate taxes entirely. Id. at 573, 940 A.2d 1202. Therefore in Oberhand, unlike here, it was the retroactive application of the statute itself that resulted in the imposition of a tax. Moreover, the fact that Horizon was in existence at the time of the enactment further distinguishes the present facts from Oberhand, where the timing of the deaths of the descendents precluded any possibility of altering their estate plans to avoid the retroactive effect of the new law. As a result, the court finds no manifest injustice.

*319
Conclusion

For the foregoing reasons, the court finds that Premium Tax Cap Statute is constitutional as amended. The statute is reasonably related to a legitimate government purpose and there is a rational basis for A4401. Accordingly, the Director’s motion for summary judgment is granted and Horizon’s motion for summary judgment is denied.

 NJ.S.A. 54:18A-1 requires all domestic and foreign insurance companies doing business in the state of New Jersey to pay an annual tax "based on net premiums on contracts of insurance covering property and risks located within this State written during the calendar year ending December 31 next preceding." Ibid. Taxable premiums include "all gross premiums, policy fees, premium deposits and assessments provided for by the respective policies or contracts and collected by the company, except reinsurance” and less any of the above returned due to cancellation of a policy or unused by the policyholder during the course of the year. NJ.S.A. 54:18A-4.

 The parties dispute whether such a conversion would have resulted in increased revenues for the State.

 New Jersey's fiscal year runs from July 1st to June 30th.

 According to a news article submitted by Horizon, State Treasurer John McCormac deemed A2917 illegal and warned the Legislature that Horizon would file a lawsuit to block it. Jeff Whelan and Joe Donohue, Democrats End Budget Stalemate, Newark Star-Ledger, July 1, 2005, at 1, 24.

 The sponsor of Assem. Resol. 292, supra, Assemblyman Neil M. Cohen, introduced resolutions in the 212th and 213th Legislatures that mirrored the language in Assem. Resol. 292. See Assem. Resol. 56, 212th Leg., Reg. Sess. (N.J.2006); Assem. Resol. 110, 213th Leg., Reg. Sess. (N.J.2008). Finally, on February 9, 2009 Assem. Concurrent Resol. 220, 213th Leg., Reg. Sess. (N.J. 2009) urged the Commissioner of Banking and Insurance and the Attorney General to take certain additional actions while examining proposed conversion of Horizon. Ibid.

 Fundamental rights are those which have their source, explicitly or implicitly, in the United States Constitution. Plyler v. Doe 457 U.S. 202, 218 n. 15, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

 A suspect class is one “saddled with such disabilities, or subjected to such a history of purposeful unequal treatment or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

 N.J. Const. art. I, § 1 ¶ 1 reads “All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." Ibid. Although Article I, Section 1 does not contain the express terms "equal protection," the Supreme Court of New Jersey has construed the expansive language of that provision as guaranteeing the fundamental constitutional right to equal protection of the law. Caviglia v. Royal Tours of Am., 178 N.J. 460, 472, 842 A.2d 125 (2004).

 "While the equal-protection and due-process clauses 'protect against different evils,' analyses under those clauses, 'while proceeding along parallel lines, may overlap.’ " Drew Assocs. of NJ, LP v. Travisano, 122 N.J. 249, 258, 584 A.2d 807 (1991) (quoting Greenberg v. Kimmelman, 99 N.J. 552, 562, 569, 494 A.2d 294 (1985)). The analysis here overlaps given the fact that A4401 must be judged under the rational basis test articulated above.

 Horizon in its briefs does not explicitly argue that there are no conceivable legitimate state purposes to support A4401. For the sake of thoroughness, the court will address this possible argument.

 Horizon's reliance on Raybestos-Manhattan, Inc. v. Glaser, 144 N.J.Super. 152, 180, 365 A.2d 1 (Ch.Div.1976) is misplaced. In Raybestos-Manhattan, Inc., the legislature enacted a statute that imposed upon employers of 500 or more persons and who ceased operations at a place of employment in New Jersey a tax equal to the total amount of nonvested pension benefits of qualifying *306 employees. Id. at 173, 365 A.2d 1. The Raybestos-Manhattan, Inc. court noted that the reasonableness of the statute’s classification "must be judged in light of the legislative objective," which was the protection of employees against loss of unvested^ension benefits. Id. at 175, 365 A.2d 1. The court found that ”[t]here [was] no rational basis justifying a classification which safeguards the unvested pension benefits of employees of a firm employing 500 persons while excluding from its protection employees of firms employing 400, 300, 200 or fewer persons.” Id. at 179, 365 A.2d 1. Moreover, since the classification had to be viewed in reference to the legislative objective of the act, "consideration relating to the state economy alone will not suffice to justify the exclusion.” Id. at 180. Raybestos-Manhattan, Inc. therefore requires the court to judge the reasonableness of a classification contained within a statute with that particular statute's legislative objective. Conversely, Horizon wishes for this court to compare the classification contained within A4401 with the legislative objective of the Premium Tax Cap Statute before it was amended. However, the classification contained in A4401 must be judged in relation to the legislative objective behind A4401. See also Kline v. N.J. Racing Commission, 38 N.J. 109, 117-18, 183 A.2d 48 (1962), where a supplement to N.J.S.A. 5:5-22 et seq., allowed only holders of outstanding permits to apply for and receive special racing permits for the year 1962. The reasonableness of that classification was also judged in light of the legislative objective of the statute that contained the classification. Ibid.

 For the reasons set forth in O’Brien, supra, Horizon's reliance on A2917 and AR292 as evidence of the Legislature's retaliatory motive is misplaced in the Equal Protection/Due Process analysis. The United States Supreme Court has announced, however, that inquiry into legislative purpose is appropriate when the nature of the constitutional question requires such an inquiry, such as when a statute is challenged as a Bill of Attainder. O’Brien, supra, 391 U.S. at 383 n. 30, 88 S.Ct. 1673. Horizon raises such an argument and therefore this court will address the relevancy of A2917 and AR292 in the Bill of Attainder section of this opinion.

 Hospital Service Plan of New Jersey has changed its name and merged into what is now Horizon.

 Generally, insurance issued to large groups.

 Generally, insurance issued to individuals and small groups.

 Meaning HSCs had to accept any individual who wanted health insurance, regardless of health or other risk factors.